## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: | : CHAPTER 11 |
| | : |
| BERKS BEHAVIORAL HEALTH, LLC | : |
| | : |
| DEBTOR | : BANKRUPTCY NO. 10-10290 |
| | : |
| BERKS BEHAVIORAL HEALTH, LLC | : |
| | : |
| PLAINTIFF | : |
| | : |
| VS. | : |
| | : |
| ST. JOSEPH REGIONAL HEALTH NETWORK | : |
| D/B/A ST. JOSEPH MEDICAL CENTER, | : |
| CATHOLIC HEALTH INITIATIVES, AND | : |
| BORNEMANN HEALTH CORPORATION D/B/A | : |
| BORNEMANN PSYCHIATRY ASSOCIATES | : |
| | : |
| DEFENDANT | : ADVS. NO. 10-163 |

# OPINION

BY: STEPHEN RASLAVICH, CHIEF UNITED STATES BANKRUPTCY JUDGE.

Introduction

       The Debtor/Plaintiff (Berks) has filed suit against the St. Joseph Regional Health

Network, d/b/a St. Joseph Medical Center (St. Joe), Catholic Health Initiatives (CHI) and

Bornemann Health Corporation d/b/a Bornemann Psychiatry Associates (Bornemann).

The Defendants have filed two separate motions to dismiss for lack of subject matter

jurisdiction.  Briefs were filed and oral argument was heard with respect to each on

December 8, 2011 and January 19, 2012.  Both motions will be addressed herein and

each will be denied.

Background

Berks was a provider of mental health care services.  In March 2008, Berks
entered into a Management Services Agreement (MSA) with St. Joe, and Bornemann.
See First Amended Complaint, Ex.1.  Berks maintains that St. Joe and Bornemann
breached their agreement.  So severe were the Defendants' alleged derelictions under
the MSA that Berks was forced to file bankruptcy as a result.  Id. ¶ 81.
Notwithstanding, Berks confirmed a plan of liquidation which will pay creditors in full
and provide for the possibility of a return to equity holders.  In the main bankruptcy
proceeding, St. Joe filed two Proofs of Claim for unpaid rent.  See Case No. 10-10290,
Claim ## 43, 44.

Prior to confirmation, Berks filed this adversary proceeding.  The First Amended
Complaint alleges two counts for breach of contract and two counts demanding
turnover of property as a result.[1]  The Motion maintains that such causes of action are
outside this court's subject matter jurisdiction.

Bankruptcy Court Jurisdiction

The Defendants' challenge implicates a fundamental part of the federal
bankruptcy system: the limited jurisdiction bestowed on bankruptcy courts to adjudicate
matters.  In re Close, 2003 WL 22697825, at *2 (Bkry.E.D.Pa. Oct. 29, 2003).  Title 28
provides, in pertinent part, that "the district courts shall have original but not exclusive

---

[1] It has included CHI as a defendant because CHI is alleged to be the principal of St. Joe.
See First Amended Complaint, ¶ 10.

2

jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases

under title 11." 28 U.S.C. § 1334(b) (emphasis added).  District Courts are, therefore,

empowered to refer bankruptcy matters to bankruptcy court:

> Each district court may provide that any or all cases under
> title 11 and any or all proceedings arising under title 11 or
> arising in or related to a case under title 11 shall be referred
> to the bankruptcy judges for the district.

28 U.S.C. § 157(a)(emphasis added).  The jurisdictional reach of a bankruptcy court is

defined as follows:

> [b]ankruptcy judges may hear and determine all cases under
> title 11 and all core[2] proceedings arising under title 11, or
> arising in a case under title 11, referred under subsection (a)
> of this section, and may enter appropriate orders and
> judgments, subject to review under section 158 of this title.

28 U.S.C. § 157(b)(emphasis added).  Core proceedings include, but are not limited to–

> (A) matters concerning the administration of the estate;
> (B) allowance or disallowance of claims against the estate or
> exemptions from property of the estate, and estimation of
> claims or interests for the purposes of confirming a plan
> under chapter 11, 12, or 13 of title 11 but not the liquidation
> or estimation of contingent or unliquidated personal injury
> tort or wrongful death claims against the estate for purposes
> of distribution in a case under title 11;
> (C) counterclaims by the estate against persons filing claims

---

[2]A term of art, "core" in this context derives from the Supreme Court's ruling in *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.,* 458 U.S. 50, 102 S.Ct. 2858 (1982). There, the High Court held unconstitutional the jurisdictional grants of the Bankruptcy Act of 1978.  Specifically, it struck down the provision which authorized Article I bankruptcy courts to hear certain matters that constitutionally could only be heard by courts whose judges are protected by the safeguards in Article III.  *Id.* at 84, 102 S.Ct. at 2878 (bankruptcy courts do not constitutionally have jurisdiction over claims for breach of contract and misrepresentation, [because they] involve a right created by *state* law, a right independent and antecedent to the reorganization petition that conferred jurisdiction upon the Bankruptcy Court") (emphasis in original).

against the estate;
(D) orders in respect to obtaining credit;
(E) orders to turn over property of the estate;
(F) proceedings to determine, avoid, or recover preferences;
(G) motions to terminate, annul, or modify the automatic stay;
(H) proceedings to determine, avoid, or recover fraudulent conveyances;
(I) determinations as to the dischargeability of particular debts;
(J) objections to discharges;
(K) determinations of the validity, extent, or priority of liens;
(L) confirmations of plans;
(M) orders approving the use or lease of property, including the use of cash collateral;
(N) orders approving the sale of property other than property resulting from claims brought by the estate against persons who have not filed claims against the estate;
(O) other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship, except personal injury tort or wrongful death claims; and
(P) recognition of foreign proceedings and other matters under chapter 15 of title 11.

28 U.S.C. § 157(b)(2) (emphasis added).

A proceeding is classified as "core" under 28 U.S.C. § 157 "if it invokes a substantive right provided by Title 11 or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case." In re Marcus Hook Development Park., Inc., 943 F.2d 261, 267 (3d Cir.1991) (quoting Beard v. Braunstein, 914 F.2d 434, 444 (3d Cir.1990)). Core proceedings represent those disputes so intertwined with the bankruptcy process that Congress has the power under Article I of the Constitution to direct a non-tenured judicial officer (i.e., bankruptcy judge) to render a final determination of their merits. See 1 Norton Bank. L. & Prac. 3d, § 4:65 (2012) ("The

4

word 'core' was a shorthand word employed to signify issues and actions that

traditionally formed part of the functions performed under federal bankruptcy law").

Where a matter does not qualify as "core" but yet has some nexus with the

bankruptcy case, it may nevertheless be heard by the Bankruptcy Court on a

preliminary basis:

> A bankruptcy judge may hear a proceeding that is not a core
> proceeding but that is otherwise related to a case under title
> 11. In such proceeding, the bankruptcy judge shall submit
> proposed findings of fact and conclusions of law to the
> district court, and any final order or judgment shall be
> entered by the district judge after considering the
> bankruptcy judge's proposed findings and conclusions and
> after reviewing de novo those matters to which any party
> has timely and specifically objected.

28 U.S.C. § 157(c)(1)(emphasis added).[3]  The Third Circuit has defined a "non-core" yet

"otherwise related" proceeding as one whose:

> outcome … could conceivably have any effect on the estate
> being administered in bankruptcy." Pacor v. Higgins, 743
> F.2d 984,994 (3d Cir.1984) (emphasis omitted); see In re
> Guild, 72 F.3d at 1180-81. "[T]he proceeding need not
> necessarily be against the debtor or against the debtor's
> property." In re Guild, 72 F.3d at 1180-81. "' A key word in
> [this test] is conceivable. Certainty, or even likelihood, is not
> a requirement. Bankruptcy jurisdiction will exist so long as it
> is possible that a proceeding may impact on the debtor's
> rights, liabilities, options, or freedom of action or the
> handling and administration of the bankrupt estate. "' Id. at
> 1181 (quoting In re Marcus Hook, 943 F.2d at 264)
> (emphasis omitted).

Halper v. Halper, 164 F.3d 830, 837 (3d Cir.1999)(footnote omitted).  A leading

---

[3]The statute does provide, however, that all parties may consent to the Bankruptcy
Court's entry of a final judgment. *See* U.S.C. § 157(c)(2)

commentator opines:

> Civil proceedings encompassed by section 1334(b)'s "related proceedings" are those whose outcome could conceivably have an effect on the bankruptcy estate and that (1) involve causes of action owned by the debtor that became property of a title 11 estate under section 541 (as distinguished from postpetition causes of action, i.e., those that come into existence during the pendency of the bankruptcy case), or (2) are suits between third parties that "in the absence of bankruptcy, could have been brought in a district court or a state court."

1 Collier on Bankruptcy ¶ 3.01[3][e][ii] (Matthew Bender 16th Ed. revised).

Burden of Proof

Although it is the Defendants' Motion which is before the Court, the burden of proof is on the Plaintiff.  Once challenged, the party asserting subject matter jurisdiction has the burden of proving its existence.  2 Moore's Federal Practice  § 12.30[5] (Matthew Bender 3d Ed.); see Robinson v. Overseas Military Sales Corp., 21 F.3d 502, 507 (2d Cir. 1994) (burden of proving jurisdiction is on party asserting it); Boudreau v. United States, 53 F.3d 81, 82 (5th Cir.) cert denied 516 U.S. 1071 (1995) (burden of proof on plaintiff to show court had jurisdiction over claim under Flood Control Act of 1928).  In determining whether this burden has been met, the court need not confine its evaluation to the face of the pleadings, but may review or accept any evidence such as affidavits or it may hold an evidentiary hearing.  Moore's supra, § 12.30[3].  In this case, the evidentiary burdens is not an unduly problematic issue given that the parties appear to rely on the same evidence; to wit, the MSA, the plan and other documents of record in the main bankruptcy proceeding.

Complaint's Stated
Jurisdictional Basis

It is maintained that this is a "core" proceeding.  See First Amended Complaint ¶

14.  Specifically, four bases of "core" jurisdiction are set forth: "(A) matters concerning

the administration of the estate; ... (C) counterclaims by the estate against persons

filing claims against the estate; ... (E) orders to turn over property of the estate; and

(O) other proceedings affecting the liquidation of the assets of the estate or the

adjustment of the debtor-creditor or the equity security holder relationship... " Id. citing

28 U.S.C. § 157(b)(2)(A), (C), (E) and (O).

Matters of Administration

As the first basis of core jurisdiction, the Complaint relies on subparagraph (A) of

§ 157(b)(2): matters concerning the administration of the estate.  Such matters are said

to be those which are unique to bankruptcy cases.  See 1 Collier on Bankruptcy ¶

3.02[3][a].  That cannot be said of the Plaintiff's claims.  Absent bankruptcy, the claims

raised in the adversary proceeding would be typical garden-variety state law litigations.

In other words, they are not bankruptcy-specific and, as such, cannot be characterized

as core.

Counterclaim to Proof of Claim

The next proffered basis of core jurisdiction alleged is subparagraph (C): a

counterclaim to a proof of claim.  This refers to the two Proofs of Claim filed by St. Joe

for over $1 million in lease rejection damages.  Berks filed a separate objection to those

claims and neither party argues that the Court would lack jurisdiction over them.  The

essential question is whether this adversary proceeding constitutes a counterclaim to

the St. Joe proofs of claim that is within the jurisdictional confines of subparagraph (C).

The Supreme Court has recently considered the jurisdictional scope of

subparagraph (C).  It held that bankruptcy courts lack authority to enter a final

judgment on a state law counterclaim that is not resolved in the process of ruling on a

creditor's proof of claim.  See Stern v. Marshall, 131 S.Ct. 2594 (2011) (holding that 28

U.S.C. § 157(b)(2)(C) is unconstitutional as applied).  In Stern, a creditor filed a proof

of claim for defamation.  In response, the debtor filed a counterclaim for tortious

interference with her expectation of an inter vivos gift from her late husband. The

Bankruptcy Court treated the counterclaim as core, but the District Court reversed on

that point.  The Court of Appeals concurred[4] with the District Court and explained that

to rule otherwise did not comport with the principles of Marathon and Congress' desire

to revise the Bankruptcy Code in a manner consistent with the Constitution.  In

affirming the Circuit Court, the Supreme Court looked to the cases involving

counterclaims based upon the avoiding powers to conclude that such counterclaims are

part of the claims allowance process.  Although suggesting that ruling on an objection

to a claim might implicate counterclaims other than avoidance claims, the High Court

found that the counterclaim in that case was not intertwined with the proof of claim.

It is the Debtor's position that unlike the counterclaim in Stern, the proceeding

---

[4]The Court of Appeals reversed the District Court to the extent that lower court's ruling
was found to be precluded by the prior Texas state court jury verdict that was handed down.
See In re Marshall, 600 F.3d 1037, 1064 (9th Cir. 2010)

sub judice will be disposed of when the Court allows (or disallows) the St. Joe claims.

Debtor's Brief 17.  In the Court's view, however, Debtor has the premises reversed.

Stern holds that resolving the claim objection must resolve the causes of action in the

adversary proceeding for core jurisdiction to exist.  That will not occur here.  The Proofs

of Claim seek unpaid rent; the adversary proceeding demands damages for alleged

breach of a management agreement.  Berk's demand goes well beyond the claim for

unpaid rent.  Because there would remain a great deal to be adjudicated after the

Proofs of Claim are ruled on, reliance on subparagraph (C) is misplaced.

Turnover

The third basis for core jurisdiction is subparagraph (E): "order to turnover of

property to the estate." Bankruptcy Code § 542 provides, in pertinent part, that "an

entity ... in possession, custody or control, during the case of property that the trustee

may use, sell, or lease under § 363 of this title ... shall deliver to the trustee, and

account for, such property or the value of such property ..." 11 U.S.C. § 542(a).

Although Counts III and IV are styled "turnover," the present posture casts doubt on

that characterization.

Examination of the question of whether an action is properly characterized as a

turnover proceeding often occurs in connection with a determination of whether a

matter is a core or non-core proceeding.  See, e.g., Beard v. Braunstein, 914 F.2d 434,

444 (3d Cir.1990); see also In re Asousa Partnership, 264 B.R. 376, 384

(Bankr.E.D.Pa.2001)("Turnover under 11 U.S.C. § 542 is a remedy available to debtors

9

to obtain what is acknowledged to be property of the bankruptcy estate."); see also

Creative Data Forms, Inc. v. Pennsylvania Minority Business Development Authority (In

re Creative Data Forms, Inc.), 41 B.R. 334, 336 (Bankr.E.D.Pa.1984) ("[I]f the debtor

does not have the right to possess or use the property at the commencement of the

case, a turnover action cannot be a tool to acquire such rights."), aff'd, 72 B.R. 619

(E.D.Pa.1985), aff'd, 800 F.2d 1132 (3d Cir.1986) (table).

Numerous courts have held that a turnover is not proper where a bona fide

dispute exists.  See In re Allegheny Health Education and Research Foundation, 233

B.R. 671, 677 (Bankr.W.D.Pa.1999) citing U.S. v. Inslaw, Inc., 932 F.2d 1467, 1472

(D.C.Cir.1991) (" 'It is settled law' that turnover actions under § 542 cannot be used 'to

demand assets whose title is in dispute' ") see also In re 2045 Wheatsheaf Associates,

1998 WL 910228 *10 (Bankr.E.D.Pa.) (quoting In re Johnson, 215 B.R. 381, 386

(Bankr.N.D.Ill.1997), to the effect that "[t]urnover under § 542 of the Code 'is not

intended as a remedy to determine disputed rights of parties to property. Rather, it is

intended as a remedy to obtain what is acknowledged to be property of the bankruptcy

estate.' "); In re LiTenda Mortgage Corp., 246 B.R. 185, 195 (Bankr.D.N.J.2000) citing

In re CIS Corp., supra, 172 B.R. at 760 ("The terms 'matured, payable on demand, or

payable on order' create a strong textual inference that an action should be regarded as

a turnover only when there is no legitimate dispute over what is owed to the debtor.");

In re F & L Plumbing & Heating Co., 114 B.R. 370, 376–77 (E.D.N.Y.1990) (explaining

that where no set fund exists and other parties may have legal rights to the monies

sought, no turnover action lies); In re Ven–Mar Intern., Inc., 166 B.R. 191, 192–93

(Bankr.S.D.Fla.1994) (holding that § 542 does not provide a means to recover property

where a dispute exists between the parties); In re Matheney, 138 B.R. 541, 546

(Bankr.S.D.Ohio 1992) (stating that an action is properly characterized as one for

turnover when the trustee or debtor in possession is seeking to obtain property of the

debtor, not property owed to the debtor); In re Kenston Management Co., 137 B.R.

100, 107 (Bankr.E.D.N.Y.1992) (holding that an action for turnover only exists if the

debt has matured and is "specific in its terms as to the amount due and payable"); In re

FLR Company, Inc., 58 B.R. 632, 634 (Bankr.W.D.Pa.1985) ( "Implicit in the bankruptcy

context of turnover is the idea that the property being sought is clearly the property of

the Debtor but not in the Debtor's possession. Turnover, 11 U.S.C. § 542, is not the

provision of the Code to determine the rights of the parties in legitimate contract

disputes.")

    The Third Circuit has explained that a "bona fide dispute" exists only when there

is "a genuine issue of material fact that bears upon the debtor's liability, or a

meritorious contention as to the application of law to undisputed facts." B.D.W.

Associates v. Busy Beaver Bldg. Ctrs., 865 F.2d 65, 66 (3d Cir.1989) (adopting standard

enunciated in In re Busick, 831 F.2d 745, 746 (7th Cir.1987) which, in turn adopted In

re Lough, 57 B.R. 993, 997 (Bankr.E.D.Mich.1986) with gloss: requiring that fact or

legal issue in dispute be "substantial").  Applying this definition to the three counts, the

Court notes that the Defendants vigorously dispute that they are liable for any monies

due.  Without belaboring the merits of the question the Court holds simply that no

turnover claim exists sufficient to establish core jurisdiction.

Other Proceedings
Affecting Liquidation
or Debtor/Creditor Relationship

That leaves the fourth and final basis for core jurisdiction offered in the amended

complaint: "other proceedings affecting the liquidation of the estate or the

debtor/creditor relationship."  28 U.S.C. § 157(b)(2)(O).  Like subparagraph (A),

subparagraph (O) generally assumes a type of proceeding as opposed to a specific

statutory grant of core jurisdiction.  A leading commentator lists (O) along with (A) as

one of the catch-all core jurisdiction provisions.  See 1 Collier on Bankruptcy ¶

3.02[3][e].  Yet, the Third Circuit has cautioned as to the limited application of these

two catch-all core provisions:

> The apparent broad reading that can be given to 157(b)(2)
> should be tempered by the Marathon decision."  781 F.2d at
> 162. The court held that state law contract claims which do
> not fall within the specific categories of core proceedings
> listed in 28 U.S.C. §§ 157(b)(2)(B)-(N) are non-core, even if
> they arguably fall within the two "catch-all" provisions of
> section 157(b)(2)(A) ("matters concerning the administration
> of the estate") or section 157(b)(2)(O) ("other proceedings
> affecting the liquidation of the assets of the estate").  "To
> hold otherwise would allow the bankruptcy court to enter
> final judgments that this court has held unconstitutional."
> 781 F.2d at 162.

Beard v. Braunstein, 914 F.2d 434, 443 -444 (C.A.3 (Pa.),1990).  In concurring, Collier

notes that the language of subparagraph (O) apparently is "based upon statements in

Marathon that the core of the bankruptcy power is the adjustment of debtor-creditor

relationships." To that, it adds that "[a]ny residual problems of misinterpretation must

be considered in light of Stern v. Marshall." See 1 Collier on Bankruptcy ¶

3.02[3][d][ii]; see also Piombo Corp. v. Castlerock Properties (In re Castlerock

Properties), 781 F.2d 159, 162 (9th Cir. 1986) (holding that subparagraphs (A) and (O),

the catch-all core provisions must be applied narrowly); and Harris v. Whitman (In re

Harris), 590 F.3d 730, 739 (9th Cir. 2009) (holding that chapter 7 debtor's removed

state court suit against trustee for negligent liquidation of estate was core matter under

subparagraph (O))

This guides the Court to the conclusion that the Complaint is outside

subparagraph (O)'s limits. The claims do not pertain to how the a trustee or debtor in

possession is liquidating or administering the estate. Indeed, the dispute occurred

outside the bankruptcy context. Neither would it alter a debtor/creditor relationship.

The parties status vis-a-vis each other is not one of borrower and lender; rather, they

are parties in privity to an agreement which Plaintiff contends has been breached.

Nothing in the Complaint seeks to alter the essential character of their relationship as to

the other. In sum, none of the four proffered jurisdictional bases supports the Debtor's

claim of core jurisdiction.

Related Jurisdiction

A finding that this matter is not "core" for jurisdiction purposes does not mean,

however, that the causes of action are not otherwise related to the bankruptcy case.

The Complaint alleges in the alternative that this matter is related to a pending

bankruptcy case.  First Amended Complaint ¶ 13.  The Third Circuit has explained that

"[w]ith 'related to' jurisdiction, Congress intended to grant bankruptcy courts

'comprehensive jurisdiction' so that they could 'deal efficiently and expeditiously' with

matters connected with the bankruptcy estate." In re Resorts Intern., Inc., 372 F.3d

154, 163-164 (3d Cir.2004) quoting Celotex Corp. v. Edwards, 514 U.S. 300, 308, 115

S.Ct. 1493, 131 L.Ed.2d 403 (1995) (quoting Pacor, Inc. v. Higgins, 743 F.2d 984, 994

(3d Cir.1984) overruled on other grounds, Things Remembered, Inc. v. Petrarcha, 516

U.S. 124, 116 S.Ct. 494 (1995)).  That such "connection" must be real cannot be

overemphasized; as always, bankruptcy courts have limited jurisdiction.  Id.

The test for determining relatedness remains the Third Circuit's Pacor decision.

There, it held that bankruptcy courts have jurisdiction to hear a proceeding if "the

outcome of that proceeding could conceivably have any effect on the estate being

administered in bankruptcy." Id.  In In re Marcus Hook Dev. Park, Inc., 943 F.2d 261

(1991), the Court of Appeals added the gloss that the term "conceivable" should not be

understood to connote "[c]ertainty, or even likelihood" that the estate would be

affected.  Id. at 264.  Neither must "the proceeding [ ] be against the debtor or against

the debtor's property.  An action is related to bankruptcy if the outcome could alter the

debtor's rights, liabilities, options, or freedom of action (either positively or negatively)

and in any way impacts upon the handling and administration of the bankrupt estate."

Pacor, supra, 743 F.2d at 994.  In adopting Pacor, the Supreme Court established the

fundamental premise that "bankruptcy courts have no jurisdiction over proceedings that

have no effect on the estate of the debtor." Celotex, 514 U.S. at 308 n. 6, 115 S.Ct. 1493.

Defendants' Arguments

As to why this litigation cannot affect the bankruptcy estate, the Movants make two arguments. Both arguments are premised on Berks having confirmed a plan. First, they argue that the effect of the confirmation is to vest the litigation solely in Berks. Thus, they conclude, any proceeds from this lawsuit will become property of Berks and not the estate and so will never "affect" it. Defendants' Motion 4. Second, they argue that Berks amended the complaint after confirmation at a time when this Court no longer had jurisdiction. Id.10. They assert that the amendment constitutes a new proceeding over which this Court cannot exercise jurisdiction.

At oral argument, Defendants added two new arguments. The first new position was that because Berks sought and obtained a discharge upon confirmation, it became a reorganized debtor into which the litigation vested exclusively. T-18. Like the first argument raised in the first Motion to Dismiss, the Defendants are trying to prove, once again, that the proceeds from the litigation will redound only to Berks' benefit without affecting the estate. The second new argument made at oral argument was limited to defendants CHI and Bornemann: because neither defendant was either a creditor or claimant, the argument goes, there is no jurisdiction over them. T-6.

Effect of Confirmation

As to the first argument, Berks contends that the Defendants misread the Plan.

15

Berks points out that the plan provides that Berks shall continue to exist after confirmation "solely for the purpose of realizing collecting and liquidating the remaining Assets for distribution to classes in order of priority, paying other obligations as set forth therein, and taking all action provided for in the plan." Berks' Brief, 7 quoting First Amended Plan, Art. VI(A)(1), VII(K)(4). Berks retains "the exclusive right to prosecute and enforce any and all causes of action." Id., Art. XII(A). Thus, by its very terms, the plan contemplates Berks' continued prosecution of this litigation in this forum in order to distribute assets to creditors as well as to equity interest holders. Berks' Brief 7.

The Court finds the logic of Plaintiff's argument to be convincing. Bankruptcy Code § 1142 charges the a debtor with carrying out the plan as well as any related orders of court. 11 U.S.C. § 1142(a). In short, the debtor is required to consummate the plan. 11 U.S.C. § 1142(b). That entails prosecuting the litigation as the plan provides. The result of that prosecution will likely affect the estate. Should the Debtor prevail, then assets available for distribution might reach equity interests; should the Defendants prevail then the amount owed in back rent might very well change. See Shuman v. Kashkashian (In re Shuman), 277 B.R. 638, 651 (Bkrtcy. E.D.Pa. 2001) (stating that a potential increase or decrease in estate property, or potential increase or decrease in liabilities of the estate, is sufficient to confer subject matter jurisdiction over a bankruptcy proceeding). Accordingly, the Court finds that this litigation is, at a minimum, related to the bankruptcy case for jurisdiction purposes.

16

Amendment Post-Confirmation

Just as the effect of plan confirmation does not divest the Court of jurisdiction,

neither does the timing of the amendment.  Defendants argue that once amended, a

complaint is judged for jurisdictional competence as of the date of the amendment not

as of the date of the original filing.  Implicit in Defendant's argument is the premise that

the jurisdiction was divested as of confirmation.  But the Court has just found supra that

confirmation of the plan did not effect a change in subject matter jurisdiction.  It exists

now as it existed then.  But assuming that it was divested, the substance of the

amendment is such that it would relate back in time to the original proceeding under

F.R.C.P. 15 (c)(1)(B).[5] The changes to the Complaint consist of dropping one defendant

and increasing—albeit substantially—the damages claim.[6]  However one views it,

amending the complaint has not changed the jurisdictional lay of the land.

Discharge Was
not Granted

The Court turns to the Defendants' first argument raised at oral argument; to

wit, that the granting of a discharge likewise divests the Court of jurisdiction.  The Court

can find no proof in the record of the very premise upon which the argument proceeds:

contrary to Defendants' contention, the Debtor did not request a discharge as part of

---

[5]The rule allows an amendment to relate back if it "asserts a claim or defense that arose
out of the conduct, transaction or occurrence set out in the original pleading."  It is made
applicable to adversary proceedings by B.R. 7015.

[6]The new damages claim is based primarily upon a lost opportunity which is explained
as an alleged expanded inpatient facility contemplated by the parties' agreement.

confirmation.  Indeed, this is a liquidating plan which would not entitle the Debtor to a

discharge even if one were sought.  See 11 U.S.C. § 1141(d)(3).  And, in fact, the

Debtor is no longer operating but exists solely for purposes of liquidation of the estate's

assets as discussed, supra.  In sum, this argument, too, lacks merit.

Jurisdiction as to
CHI and Bornemann

Defendants' second new argument at the hearing attempts to distinguish two of

the defendants from the other.  They explain that neither CHI nor Bornemann is, or

was, a claimant or creditor of Berks.  As such, neither can expect any "distribution" in

the bankruptcy.  What follows from that, they conclude, is that there is no jurisdiction

over them.  T-6.  This reflects a fundamental misunderstanding of bankruptcy court

jurisdiction.  It matters not that a defendant is neither a creditor, a claimant, nor even a

party in privity with a debtor.  What matters for jurisdictional purposes is whether the

cause of action against the defendant might conceivably affect the bankruptcy estate.

The Court has found supra that the outcome of this litigation will likely in some way

affect this bankruptcy estate.  That is sufficient for purposes of establishing subject

matter jurisdiction.

Summary

The record demonstrates that the claims raised in this adversary proceeding are

outside this court's "core" jurisdiction.  They are, however, sufficiently related to the

bankruptcy case to otherwise provide a jurisdictional nexus.  The motions to dismiss,

therefore, will be denied.

An appropriate order follows.


By the Court:


_____
Stephen Raslavich
Chief U.S. Bankruptcy Judge

Dated: <u>February 9, 2012</u>